**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: RECALLED ABBOTT INFANT FORMULA PRODUCT LIABILITY LITIGATION** | **MDL DOCKET NO._____** |

**BRIEF IN SUPPORT OF PLAINTIFF ARTURO ANDALUZ'S MOTION TO
TRANSFOR RELATED CASES FOR CONSOLIDATED PRETRIAL PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1407**

**I.      INTRODUCTION**

Arturo Andaluz's ("Plaintiff") case is substantially similar to 17 other cases pending in federal courts around the country.  The undersigned believes this number will continue to grow in the near term as additional families learn that their infant's serious bacterial infection followed his or her ingestion of the infant formula contaminated with Cronobacter sakazakii that originated from Abbott Laboratories, Inc. D/B/A Abbott Nutrition's ("Defendant") Sturgis, Michigan plant. In the absence of consolidated pretrial proceedings, the federal judiciary together with the parties stand to incur the unnecessary costs and challenges of conducting duplicative discovery while litigating substantially similar issues.

Specifically, and for the reasons stated herein, Plaintiff respectfully requests an Order transferring all related cases to the United States District Court for the Southern District of Florida before District Judge Beth Bloom who is well versed and experienced in complex litigation and class actions.  Judge Bloom has presided over the oldest related case on file, *Luis Alfredo Suarez, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 1:22-cv-20506, which is subject to a scheduling order setting a January 1, 2023 discovery deadline, January 24, 2023 mediation, and a May 8, 2023 jury trial.  The *Suarez* case

1

involves not only class action allegations, but also relates to an infant that suffered personal injury following ingestion of recalled formula class action allegations.  In the alternative, Plaintiff requests the transfer of all related cases to District Judge Anuraag Singhal of the same District.

### a.  Common Factual Background

The facts underlying the claims of Mr. Andaluz and other plaintiffs in the related cases are not shared with those alleged by plaintiffs who cases are now consolidated in the recently formed MDL, *In Re: Abbott Laboratories, Et Al., Preterm Infant Nutrition Prods. Liab. Litig.*, MDL NO. 3026 (Doc. 119) (J.P.M.L. April 8, 2022), which, unlike the instant case, involves allegations of preterm infants suffering necrotizing enterocolitis (NEC) after ingesting bovine-based formula.

Mr. Andaluz, like the plaintiffs in the other 17 substantially similar cases pending across the country, was the purchaser of infant formula manufactured, sold, and distributed by Defendant that was also the subject of a recall over reports of bacterial contamination, namely Cronobacter sakazakii.  Mr. Andaluz fed his infant child Defendant's recalled formula, his sole source of nutrition.  Soon after, his child suffered serious injury requiring medical intervention.  The conduct underlying the claims of Mr. Andaluz and other plaintiffs came to light on February 17, 2022, when the Food and Drug Administration ("FDA"), in conjunction with the Centers for Disease Control and Prevention ("CDC"), announced a warning to consumers to not purchase or use Recalled Product, stating: "Do not use recalled Similac, Alimentum and EleCare powdered infant formulas produced in Sturgis, Michigan."  As part of the Warning, the FDA Deputy Commissioner for Food Policy and Response stated:

> As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections. We want to reassure the public that we're working diligently with our partners to investigate complaints related to these products, which we recognize include infant formula produced at this facility, while we work to resolve this safety concern as quickly as possible.

Specifically, the FDA announced that it is investigating consumer complaints of Cronobacter sakazakii and Salmonella Newport infections connected to powdered infant formula products produced by Abbott.

The same day as the FDA's announcement, Abbott issued a recall of certain lots of powdered infant formulas, including those marketed under the Similac, Alimentum, and Elecare brands. Ten days later, the recall was expanded to include Similac PM 60/40, which was also manufactured in Abbott's Sturgis, Michigan facility. By this time, the FDA, together with the CDC, had found four hospitalizations and two deaths of infants infected with Cronobacter following exposure to Abbott's recalled lots of powdered infant formula.[1]

Per the CDC, Cronobacter sakazakii is a germ that can live in very dry places. The germs can live in dry foods, such as powdered infant formula. Cronobacter bacteria can get into formula powder if contaminated raw materials are used to make the formula or if the formula powder touches a contaminated surface in the manufacturing environment. Cronobacter bacteria can cause severe, life-threatening infections, meningitis, and symptoms include: poor feeding, irritability, temperature changes, jaundice, grunting, and abnormal body movements. As set forth by the CDC:

> Infants (<12 months old): In infants, Cronobacter usually causes sepsis or severe meningitis. Some infants may experience seizures. Those with meningitis may develop brain abscesses or infarcts, hydrocephalus, or other serious complications that can cause long-term neurological problems. The mortality rate for Cronobacter meningitis may be as high as 40%.[2]

Other sources have described the mortality rate reaching as high as 80%.[3]

---

[1] FDA.gov, https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-infections-powdered-infant-formula-february-2022 (last accessed on April 13, 2022).

[2] CDC.gov, https://www.cdc.gov/cronobacter/technical.html (last accessed on March 25, 2022).

[3] Norberg S, Stanton C, Ross RP, Hill C, Fitzgerald GF, Cotter PD. Cronobacter spp. in powdered infant formula. J Food Prot. 2012 Mar;75(3):607-20. doi: 10.4315/0362-028X.JFP-11-285. PMID: 22410240.

Shortly thereafter, the FDA began to make available documentation relating to its past inspections of Defendant's Sturgis, Michigan facility, which uncovered numerous violations of statutes and regulations set forth herein in Defendant's manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas.   As documented in the FDA Form 483 issued on September 24, 2019, Defendants failed to test a representative sample of an infant formula production aggregate of powered infant formula at the final product stage and before distribution to ensure that the production aggregate met the required microbiological quality standards.[4]

Subsequent inspections suggest Defendant had on multiple occasions disregarded industry practices, as well as applicable statutes and regulations, with respect to manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas.   As documented in the FDA Form 483 issued on September 24, 2021:

- Defendant failed to maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition; and

- Defendant personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated.[5]

---

[4] FDA.gov, Sept. 24, 2019 Form 483, available at https://www.fda.gov/media/156748/download (last accessed on April 13, 2022).
[5] FDA.gov, Sept. 24, 2021 Form 483, available at https://www.fda.gov/media/156747/download (last accessed on April 13, 2022).

Additionally, in June 2020, Abbott destroyed products because of a cronobacter contamination.[6] This development is especially alarming when considering the FDA's earlier finding that Defendant had failed to test a representative sample of powdered infant formula at the final product stage.  Both instances occurred at the same plant that produced the infant formula purchased by each plaintiff within the 18 substantially similar cases pending around the country.   Despite this pattern of alarming issues spanning years, Abbott waited until February 17, 2022 to initiate a recall of the contaminated product.

Subsequent Agency inspections uncovered still more concerning findings such as those documented in the FDA Form 483 issued on March 18, 2022:

- Defendant failed to set in place and/or maintain a system of process controls that cover all stages of infant formula processing to ensure the product does not become adulterated due to the presence of microorganisms (such as cronobacter) in the formula or in the processing environment;

- Defendant further failed to ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated with microorganisms, (such as cronobacter);

- Defendant failed to document any determination as to whether a hazard to health exists due to contamination with microorganisms (such as cronobacter); and

---

[6] Felton, Ryan, "How the FDA Bungled the Powdered Infant Formula Recall," *Consumer Reports*, at https://www.consumerreports.org/baby-formula/how-the-fda-bungled-the-powdered-infant-formula-recall-a1149556847/ (last accessed on April 13, 2022).

- Defendant's personnel that worked directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces failed to wear necessary protective apparel.[7]

The FDA's inspection reports establish that, at various times, Defendant:

- Had knowledge that Cronobacter contaminated its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant;

- Failed to adequately test for Cronobacter in its powdered infant formula;

- Failed to ensure numerous controls were in place to prevent contamination of its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant.

Arturo Andaluz's case, like the 17 other substantially similar cases now pending before federal courts around the country, rests on a common theory of liability relating to Defendant's handling of powdered infant formula at its Sturgis, Michigan plant, resulting in its contamination with Cronobacter sakazakii and Salmonella Newport.

### b. Litigation History

The 18 separate actions now pending in Federal Courts around the country collectively involve twenty-three named Plaintiffs, not counting the injured parties on whose behalf their parents and guardians assert claims. All but two of the 18 actions include class action allegations that seek certification of state-specific and/or nationwide classes. Additionally, seven of the 18

---

[7] FDA.gov, March 18, 2022 Form 483, available at https://www.fda.gov/media/157073/download (last accessed on April 13, 2022).

separate actions involve putative class representatives or individual plaintiffs who allege physical

injury as a result of ingesting Defendant's recalled products.[8]

The following cases are currently pending:

- Southern District of Florida

  o *Israel Ephraim, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 1:22-cv-20516.

  o *Luis Alfredo Suarez, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 1:22-cv-20506.

- Central District of California

  o *Arturo Andaluz, on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 2:22-cv-02001.

- Northern District of Illinois

  o *Cindy Lopez Bazemore, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01126.

---

[8] Complaints that allege physical injury as a result of ingestion of defendant's recalled powdered infant formula include: *Luis Alfredo Suarez, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 1:22-cv-20506 (S.D. Fla.) (Bloom, J.); *Israel Ephraim, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 1:22-cv-20516 (S.D. Fla.) (Martinez, J.); *Arturo Andaluz, on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 2:22-cv-02001 (C.D. Cal.) (Wu, J.); *Samandria Harkless, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01097 (N.D. Ill.) (Kness, J.); *Katie Steele, individually and as the legal guardian of a minor child and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 2:22-cv-00571 (Dist. of S.C.) (Norton, J.);    *Trevor Stephens, Individually and as Next Friend of B.S., a Minor, v. Abbott Laboratories, Inc.,* 3:22-cv-00618 (N.D. Tex.) (Fitzwater, J.); *Cierra Walker, Individually and on behalf of the Estate of S.H., a Minor, v. Abbott Laboratories, Inc.*, 4:22-cv-00858 (S.D. Tex.) (Bennett, J.).  Of these cases, only the *Stephens* and *Walker* cases do not seek the certification of a nationwide and/or state-specific class action.

- o *Jordan Boysen, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01259.

- o *Victoria J. Deffebaugh, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01079.

- o *Adriana Garza, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01080.

- o *Samandria Harkless, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01097.

- o *Brittany Johnson, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01239.

- o *Claresa Lyons, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01125.

- o *Kelsey McCord, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01182.

- o *Jasmyn Menendez, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01082.

- o *Cherrell R. Raymond, et al., individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01014.

- o *Carl Whitmore, et al., individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01014.

- District of South Carolina

- o *Katie Steele, individually and as the legal guardian of a minor child and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 2:22-cv-00571.

- Northern District of Texas

  - o *Trevor Stephens, Individually and as Next Friend of B.S., a Minor, v. Abbott Laboratories, Inc.*, 3:22-cv-00618.

- Southern District of Texas

  - o *Cierra Walker, Individually and on behalf of the Estate of S.H., a Minor, v. Abbott Laboratories, Inc.*, 4:22-cv-00858.

Plaintiff is unaware of any other related lawsuits pending in any federal court.

## II.    LEGAL STANDARD

Transfer and consolidation is proper if actions pending in different federal district courts involve similar questions of fact to the extent that consolidating pretrial proceedings would "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).

## III.    ARGUMENT

### a. These Actions are Appropriate for Transfer and Coordination pursuant to 28 U.S.C. § 1407(a).

#### i. These Cases Involve Common Questions of Fact.

Section 1407 also requires that for centralization to be appropriate, the cases must share "one or more common questions of fact."  The commonality of questions of fact in these cases is undeniable.  As set forth more fully in the Common Factual Background section above, the 18 complaints filed around the country center on near-identical allegations of misconduct involving

not only a single defendant but a single manufacturing facility.  These cases also relate to bacterial infections, namely Cronobacter, which create a significant risk of death in the intended consumer of Defendant's formula—infants.  More recently, media reports have also described a shortage of formula "in the weeks following the large-scale baby formula recall."[9]  The conduct alleged by these 18 plaintiffs, as supported by FDA investigations, deserve the effective, expeditious resolution of shared issues that only transfer and coordination can provide.

    ii.  <u>Transfer and Coordination Serves Not Only the "Convenience of the Parties and Witnesses," but also "Promote(s) the Just and Efficient Conduct of the Action."</u>

These 18 cases center on a time sensitive, public health matter crucial to the health of the most vulnerable.  These infants and their families deserve an organized, efficient litigation that only centralization can provide.  The parties in each case will have to retain experts in the areas of food industry safety and controls specific to infant formula. This will necessitate plaintiffs' hiring shared experts subject to inevitable *Daubert* challenges.  In the absence of centralization, all aspects of expert development, expert discovery, and related motion practice would prove inefficient and unnecessarily expensive, risking conflicting *Daubert* decisions that would increase the burden on the judiciary and parties alike, defeating the prospect of a timely resolution.

Centralization also sidesteps tremendous inefficiencies in the process of conducting discovery.  This includes reducing the cost of document review platforms and depositions for third

---

[9] Welle, Elissa, "Baby Formula Shortage Still Causing Stress for Michigan Parents," *Detroit Free Press* at https://www.freep.com/story/news/local/michigan/2022/04/14/baby-formula-shortage-what-know-after-recall-michigan-plant/9510554002/ (last accessed on April 14, 2022).  *See also* Snider, Mike, "Baby formula shortage continues: Nearly 30% of popular brands sold out, stores ration sales," *USA Today* at https://www.usatoday.com/story/money/shopping/2022/04/09/baby-formula-shortage-2022-worsens/9525498002/ (last accessed on April 14, 2022) ("The shortage comes after Abbott Nutrition voluntarily recalled in mid-February select batches of Similac, Alimentum and EleCare formulas manufactured in Sturgis, Michigan.").

party witnesses as much as party witnesses.  There is no indication thus far that informal coordination or transferal of individual cases under § 1404 in these matters can avoid these inefficiencies.  To the contrary, nearly all 18 complaints filed so far seek certification of a nationwide putative class together with state-specific putative classes[10], while at least two cases involve only a single plaintiff.[11]  While sharing a common factual background and similar theories of liability, the plaintiffs assert divergent causes of action across the complaints and, in many cases, seek the application of state-specific laws.  The progress of litigation thus far suggests informal coordination will only invite delay and confusion as evidenced by the filing of so many complaints that seek certification of the same or similar classes.  Formal consolidation and coordination under 28 U.S.C. § 1407(a) only serves to advance the prospects of resolution of not only class actions involving economic losses, but also of personal injury claims.

### b. Venue

i. <u>This Panel Should Transfer these Actions to the Southern District of Florida.</u>

The selection of an appropriate transferee court is based on a balancing test of several factors, none of which is dispositive.  *See* Manual of Complex Litigation (Fourth) § 20.131 (2004)

---

[10] *See Arturo Andaluz, on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 2:22-cv-02001 (C.D. Cal. Mar. 25, 2022) (seeking certification of nationwide and California classes) and *Claresa Lyons, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01125 (N.D. Ill. Mar. 3, 2022) (seeking certification of nationwide and California classes).  *See also Israel Ephraim, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition;* 1:22-cv-20516 (S.D. Fla. Feb. 20, 2022) (seeking certification of nationwide and Florida classes) and *Jasmyn Menendez, individually and on behalf of all others similarly situated v. Abbott Laboratories D/B/A Abbott Nutrition*, 1:22-cv-01082 (N.D. Ill. Mar. 1, 2022) (seeking certification of nationwide and Florida classes).

[11] *Trevor Stephens, Individually and as Next Friend of B.S., a Minor, v. Abbott Laboratories,* Inc., 3:22-cv-00618 (N.D. Tex. Mar. 16, 2022) and *Cierra Walker, Individually and on behalf of the Estate of S.H., a Minor, v. Abbott Laboratories, Inc.*, 4:22-cv-00858 (S.D. Tex. Mar. 16, 2022).

(citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977).  The factors include:

- Where the largest number of cases is pending;

- Where discovery has occurred;

- Where cases have progressed furthest;

- The side of the occurrence of the common facts;

- Where the cost and inconvenience will be minimized; and

- The experience, skill and caseload of available judges.

*Id*.  Many of these factors are not applicable given the infancy of this litigation.  Still, there appears no obvious location for this MDL.  Defendants' Sturgis, Michigan plant is within the Western District of Michigan, where no related case has been filed.  While Defendant resides within the Northern District of Illinois, the recent pandemic has demonstrated how vastly efficient the judiciary, parties, and counsel can conduct discovery remotely.   This has been demonstrated by Judge M. Casey Rodgers' handling of the *3M Products Liability Litigation*, MDL No. 2885, which, despite an ongoing pandemic, progressed expeditiously to the point that the MDL has overseen 14 bellwether trials within nearly three years from its inception.  There is hardly a credible argument to be made that transferring that matter closer to 3M's headquarters alone would have improved the pace and efficiency of its handling in the Northern District of Florida.  Likewise, there is no credible argument that moving this matter to Abbott's home district would improve the pace and efficiency of this matter.

The Southern District of Florida has long had the infrastructure to easily accommodate out-of-town lawyers, parties, and witnesses should the need arise to appear in person.  The Southern District of Florida has important connections to this litigating, having overseen the two earliest

cases relating to Defendant's recalled powdered infant formula: *Luis Alfredo Suarez, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 1:22-cv-20506 (S.D. Fla. Feb. 18, 2022) and *Israel Ephraim, et al., on behalf of themselves and all others similarly situated v. Abbott Laboratories, Inc. D/B/A Abbott Nutrition*; 1:22-cv-20516 (S.D. Fla. Feb. 20, 2022).   The Panel has held that the district where the first action was filed is an "appropriate transferee district." *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 536 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (ordering transfer to District of Nebraska in part "because the first-filed action was brought there"); see also *In re Wells Fargo Mortg. Lending Pracs. Litig*., 545 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008) (selecting transferee district in part because the "first-filed action" is pending there). Indeed, the *Suarez* case pending before District Judge Beth Bloom has already progressed to the entry of a scheduling order that includes a January 1, 2023 discovery deadline and a jury trial setting for May 8, 2023.  Moreover, the related cases pending in the Southern District of Florida, such as the *Suarez* case before Judge Bloom, include not only class action allegations but also plaintiffs that were physically injured after ingesting Defendants' recalled product. Transfer and consolidation within the Southern District of Florida is appropriate.

    ii. <u>Judge Beth Bloom in the Southern District of Florida has the Skill and Experience to Supervise the Recalled Infant Formula MDL.</u>

 District Judge Beth Bloom has situated the *Suarez* case in a way that stands to make the most efficient and expeditious pathway to jury trial.  It is a pragmatic reality that the prospect of an early resolution is a consideration in deciding the most appropriate transferee court.  Beyond the obvious efficiencies, an early trial setting provides a singularly unique driver to advance resolution discussions.  To this point, Judge Bloom also set the case for mediation by January 24, 2023.  Federal Magistrates provide invaluable oversight over matters as vital as discovery and do

so while providing important efficiencies that enable the court to maintain aggressive schedules. Here, too, Judge Bloom has already referred Discovery Matters to Magistrate Judge Alicia M. Otazo-Reyes.  Judge Bloom has spoken about complex litigation, including class actions, speaking at numerous conferences on the subject.[12]  More importantly, she's overseen numerous class actions through to conclusion.[13]

<ol type="i">
<li value="3">

<u>Alternatively, Judge Anuraag Singhal in the Southern District of Florida has likewise the Skill and Experience to Supervise the Recalled Infant Formula MDL.</u></li>
</ol>

District Judge Anuraag Singhal is an experienced jurist with a demonstrated ability to oversee and adjudicate the issues of this matter if consolidated before him.  Like Judge Bloom, Judge Singhal was a longstanding, experience circuit court judge in Broward County, Florida for eight years before joining the Southern District of Florida.  Judge Singhal's ability has been demonstrated in his handling to date of the *In re: Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 3015.  Indeed, with his oversight, Johnson & Johnson reached a preliminarily approved class action settlement well within a year of the MDL's inception.[14]   There are similarities between the instant matter and those in MDL No. 3015, such as various economic damage class actions brought alongside individual personal injury claims.  Judge Singhal has demonstrated the ability to oversee the efficient adjudication of pretrial

---

[12] Miami Law School, 2021 Miami Law Class Action and Complex Litigation Forum, available at:   https://www.podhurst.com/mdl-and-class-action-trends-take-center-stage-at-miami-forum/ (last accessed on April 14, 2014) and Miami Law School, 2014 Miami Law Class Action and Complex Litigation Forum, available at: https://www.law.miami.edu/press/2017/november/2nd-annual-class-action-complex-litigation-forum-um-december-8 (last accessed on April 14, 2014).

[13] *Stuart Sawyer, individually and on behalf of others similarly situated, v. Intermex Wire Transfer, LLC,* 1:19-cv-22212 (S.D. Fla. Sept. 3, 2020); *Artic Cat, Inc., v. Bombardier Recreational Prods. Inc.,* 14-cv-62369 (S.D. Fla. June 14, 2016); *Luis Rodriguez, on behalf of himself and others similarly situated, v. Dynamic Recovery Solutions, LLC,* 1:14-cv-20933 (S.D. Fla. Jan. 15, 2015);

[14] Bloomberglaw.com, https://news.bloomberglaw.com/class-action/j-j-recalled-sunscreen-settlement-gets-judges-early-approval (last accessed at April 14, 2022).

matters while all the while encouraging and facilitating the prospects for resolution of a portion or the entirety of the litigation.  Judge Singhal could more than capably oversee both MDL No. 3015 as well as a Recalled Infant Formula MDL if established by this Panel.

## IV.    CONCLUSION

Wherefore, for all the foregoing reasons, Plaintiff respectfully requests an Order transferring all related cases relating to the recalled Abbott infant formula products to Judge Beth Bloom of the Southern District of Florida, or, in the alternative, to the Judge Anuraag Singhal of the Southern District of Florida.

Dated: April 14, 2022

Respectfully submitted,

By: /s/ Bryan F. Aylstock
Bryan F. Aylstock
Caitlyn P. Miller
E. Samuel "Sam" Geisler
AYLSTOCK,    WITKIN,    KREIS    &
OVERHOLTZ, PLLC
17 E. Main Street
Suite 200
Pensacola, Florida 32602
850.202.1010
850.916.7449 (fax)
Emails:
baylstock@awkolaw.com
cmiller@awkolaw.com
sgeisler@awkolaw.com

Kiley L. Grombacher
BRADLEY/GROMBACHER, LLP
31365 Oak Crest Dr.
Suite 240
Westlake Village, California 91361
805.270.7100
805.270.7589 (fax)
Emails:
kgrombacher@bradleygrombacher.com

Attorneys    for    Plaintiff    ARTURO
ANDALUZ

15